JONATHAN WEEKS *vs.* NATHANIEL HOLMES & others.

In an action of contract by a father for the earnings of his minor son, employed without his consent, the measure of damages is, not what the son would have earned for the father during the time, but what he in fact earned in the service of the employer.  The father in such case can recover only what the son might have recovered had he been of age and competent to contract.

A minor shipped on a whaling voyage without his father's consent.  The fair and reasonable lay of the son, according to the universal usage in the whaling business, amounted to $5.48.  The advances and outfits to the son during the voyage, amounted $11.52.  In an action by the father for $79.12, the admitted value of the son's time to the father during the voyage, had he remained at home, the defendant was allowed to recover his costs, but not for the balance of the outfits and advances above the lay of the minor.

THIS was an action of contract for the services of the plaintiff's minor son, John H. Weeks, on board the whaling schooner Shylock.  The following facts were agreed by the parties, subject to the opinion of the court as to their admissibility and effect:

The defendants were the owners of said schooner, engaged

in the whaling business, and at the time of her voyage it was, and for a long time prior thereto, had been, a well established, well known, legal, and universal usage, or cus-tom in said business, for the seamen engaged therein, to sail upon a lay, or to receive in place of wages, for their time and services, a certain relative proportion of the pro-ceeds of the voyage, such as their relative experience and skill may entitle them to, or such a lay or proportion as they may agree upon beforehand; that no compensation or wages are ever paid the seamen engaged in said business for their time and services otherwise than as above set forth according to said usage or custom; that said John was a green hand, on his first voyage, and unacquainted with the business of whaling; that the reasonable, usual, and only lay received by such men, and all that their services in said business are worth, is, and was, a one hundredth lay, or a one hundredth part of the proceeds of the oil taken upon the voyage, after deducting the proportion of the expenses of fitting the vessel, and all advances made each one on account of the voyage; that such is the usual and only compensation or wages ever received by such men in said business, and all that their time and services therein are worth, and accordingly all that said John's time and services on board said vessel were worth; that said John, in accordance with said usage, did engage to go, and did proceed upon said voyage, upon an agreement made by him with the defendants, for the customary and usual lay aforesaid, and did also sign a written contract to that effect, and served on board said schooner from February 25, 1852, to December 10, 1852; that the entire proceeds of said voyage were $547.96, and the lay or proportion thereof belonging to said John, according to the usage aforesaid, was $5.48; that the amount of said John's proportion of said outfits and the advances made him on account of said voyage, was $11.52, for which the defendants file their claim also in set-off, and which the plaintiff admits was furnished said John, and were necessary for him, as a seaman, on said voyage, but for which, the plaintiff says, he is not liable; that said John, at the time of his shipment and voyage aforesaid, and during

the whole duration of the same, was under twenty-one years of age; that he went without the knowledge of his father, the plaintiff, and that he made no representations that he was of age when he so engaged. It was also agreed that the value of said John's services to the plaintiff, if he had not sailed on said voyage, would have been $8.50 per month, or $79.12 in all.

Upon the above statement, the case was submitted to the court as to the legal measure of compensation, and the amount, or balance which may be legally due the plaintiff or the defendants thereon.

Upon the foregoing statement, the court of common pleas, September term, 1853, rendered judgment for the defendants, and the plaintiff appealed to this court.

*R. B. Caverley,* for the plaintiff. 1. The facts that the plaintiff's minor son was taken by the defendants on board their whaleship, without the plaintiff's knowledge, and was carried to sea and kept in the defendants' service from February 25, 1852, to December 10, 1852; and that the value of the minor's services to the plaintiff, if he had not sailed on said voyage, would have been $79.12, were legally admissible and were sufficient to make out the plaintiff's case.

2. The agreement made by the minor, as well as the usage and custom of schooners in that business, together with the facts stated relating thereto, should be rejected by the court as inadmissible. That the agreement made by the minor, being against his interest and without his father's knowledge, was void, the authorities are abundant. *Nickerson* v. *Easton,* 12 Pick. 112. And that the usage or custom in such business was also inadmissible, seems equally clear. · *Randall* v. *Rotch,* 12 Pick. 109; *Homer* v. *Dorr,* 10 Mass. 26.

3. The claim filed by the defendants of $11.52 in set-off, as advances, is not admissible, and ought not to be allowed or recovered in this case. The advances were furnished without the plaintiff's knowledge or consent, and although they were necessary for the infant as a seaman, they cannot be classed under the general head of necessaries. *Tupper* v. *Cadwell,* 12 Met. 559.

4. The defendants having employed the minor and carried him to sea, without the plaintiff's consent, should have returned him or set him on shore, if they would protect them-selves from paying the ordinary wages which he would have earned for his father, if he had not been carried to sea.

*H. A. Scudder,* for the defendants. 1. By the form of action adopted in this case, the plaintiff waives all considerations of tort, and relies upon the implied contract of the defendants to pay for the specific services rendered.

2. The plaintiff stands in the same position as if the services referred to, had been rendered by himself, in the absence of any special contract.

3. The only question presented, therefore, is, What is the legal measure of compensation, in a *quantum meruit,* for services rendered.

4. The proper and legal measure of compensation in *quantum meruit* is, the usual or customary price paid such men for similar services, in the same business. *Murray* v. *Ware,* 1 Bibb, 325; 3 Bl. Com. 163; *Calvert* v. *Coxe,* 1 Gill, 95; 1 Chit. Pl. 341; *Lowry* v. *Russell,* 8 Pick. 362; Lawes on Pleading, 504.

5. Upon the facts agreed, and the points above stated, the measure and amount of compensation due the plaintiff in this case for the specific services rendered, is a one hundredth lay, or $5.48.

6. The defendants' claim in set-off, $11.52, being for necessaries furnished the plaintiff's son upon the voyage in question, is good against the plaintiff, and leaves a balance due the defendants of $6.04, for which they are entitled to judgment.

SHAW, C. J. Supposing the defendants liable for the earnings of the plaintiff's minor son, employed by them without his consent, which does not seem to be much contested, the question is still open on the facts agreed, what these earnings were.

This is an action of contract on the implied promise by the defendants to the plaintiff, a promise implied from his relation of father entitled to the earnings of his son. Nothing can be claimed in this action, for any supposed wrong in seducing

the plaintiff's son, or employing him without his consent. After the service was done, the father steps in with his legal claim, denies the authority of the son to receive his own earnings, and in effect says to the defendants, that which you would have been bound legally and equitably to pay him, had he been of age, or otherwise competent to contract, I require you to pay me. To this extent, his claim is recognized, and no further. In determining what that allowance shall be, the question is, not what the son would have earned for the plaintiff, but what the son earned of the defendants, in their service. *Quantum meruit?* In considering what he did in fact earn, it appears to us, that the universal custom of the business, to pay by a lay or share, instead of monthly or other wages, is competent and proper. It is not contrary to express contract, as in the case cited of *Homer* v. *Dorr*, 10 Mass. 26; nor in violation of duty and public policy, as in the cases of *Hall* v. *Gardner*, 1 Mass. 172, and *Randall* v. *Rotch*, 12 Pick. 107. Upon the facts, the court are of opinion that the plaintiff is entitled to a fair share or lay ; and this, we think, must be fixed as a one hundredth part; not because the minor agreed for it, but because it is shown to be a reasonable and fair lay, and, therefore, a just measure of the value of the services sued for. From this is to be deducted the advances of the defendants, for outfit and necessaries on the voyage, warranted by the like universal usage of the business ; and as these exceed the lay, there are no net earnings to be recovered.

But, though the defendants had a right to charge these advances against the son's earnings, because necessary to enable him to perform the voyage and earn any lay, yet in our judgment they were not chargeable to the father. There is nothing to show that the plaintiff had not made ample provision for everything necessary for his son's support and comfort. These advances were not made on his credit express or implied; on the contrary, they were made without his consent, to a son in a state of insubordination. There can be no judgment against the plaintiff, for the claim in set-off.

*Judgment for the defendants for costs*